NELSON REEVES, Administrator, v. KANSAS
CITY, ST. LOUIS & CHICAGO RAILROAD
COMPANY, Appellant.

**Division Two, June 17, 1913.**

1. **APPELLATE JURISDICTION: Constitutional Question: Set-
tled Since Appeal was Taken.** Where the appeal was taken
to the Supreme Court on the ground that the statute upon
which the action was based is unconstitutional, and its constitu-
tionality has been determined in another case since the appeal
was taken, the Supreme Court will retain jurisdiction and
dispose of the case upon its merits.

2. **NEGLIGENCE: Excessive Speed: Train Known to Be Ap-
proaching.** Because a train was running at a dangerous rate
of speed, far in excess of the ordinance rate, across the main
thoroughfare of the town, a pedestrian on a sidewalk crossing
the track was not justified in stepping onto the track when
she knew the train was approaching at its usual rapid rate
of speed, and was so close she did not have time to pass rapidly
across before it struck her.

3. ———: ———: ———: **Presumption That Defendant
Would Obey Ordinance.** A pedestrian, who knew that a train
on schedule time usually ran through the town at a speed far
in excess of the ordinance rate, was not justified in supposing
that the engineer on the particular day she attempted to cross
the track in front of it would do the unusual thing of reducing
the speed to the ordinance rate.

4. ———: **Proximate Cause of Injury.** Where deceased, seventy-
two years of age, her hearing and eyesight somewhat defective,
walked toward the railroad track, and when she was within
six or eight feet of it looked towards the approaching train,
which she knew did not usually stop at the town and with
whose schedule she was acquainted, and which was running,
as usual, at a speed of 35 to 50 miles an hour, and pulling up
her dress skirts, walked rapidly onto the track and had almost
passed over when the engine struck and killed her, the proxi-
mate cause of her injury was her own contributory negligence,
and there can be no recovery, notwithstanding the ordinance
fixed twelve miles an hour as the maximum speed of trains.

5. ———: ———: **Humanitarian Rule.** The humanitarian
rule, requiring the engineer of a train to discover a pedestrian's
peril and stop or slacken the speed thereof, does not apply

when the pedestrian is aware of the train's approach, and so knowing looks toward the train and then walks on the track in front of it. Where the adult pedestrian close to the track looks towards the approaching train the engineer is warranted in supposing she sees it and will exercise ordinary intelligence to keep out of its way.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*Scarritt, Scarritt, Jones & Miller* for appellant.

(1) The deceased was guilty of contributory negligence, as a matter of law. Laun v. Railroad, 216 Mo. 563; Pope v. Railroad, 242 Mo. 232; Moore v. Railroad, 176 Mo. 546; Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Schmidt v. Railroad, 191 Mo. 215; Lane v. Railroad, 132 Mo. 4; Kelsey v. Railroad, 129 Mo. 362; Walker v. Railroad, 193 Mo. 453. (2) Plaintiff cannot recover in this case upon the "last chance" or "humanitarian" theory, under the evidence and circumstances disclosed in the record and under the law as established by numerous decisions of this court. Plaintiff wholly failed to adduce any proof whatever as to several things that are essential to the making of a case upon the last chance theory. There is no proof that the engineer of the train in question actually saw the deceased in a position of peril upon the track. Nor is there any substantial proof that the engineer might have seen deceased in a position of peril upon the track in time, etc. If the engineer saw, or might have seen deceased as she approached the track, he had a perfect right to presume that she would stop or step back into a place of safety before going upon the track. Schmidt v. Railroad, 191 Mo. 234; Boyd v. Railroad, 105 Mo. 381; Moore v. Railroad, 176 Mo. 546. Nor is there any

evidence whatever that the deceased was in a position of unconscious peril, or, to put it differently, that she was in a position of peril, and unaware thereof and could not extricate herself therefrom.   Plaintiff does not even charge in his petition that the deceased was in a position of peril and unaware thereof, and unable to extricate herself therefrom, nor does the instruction of the court on behalf of plaintiff submitting the last chance theory to the jury, require the jury to find that the deceased was in a position of unconscious peril and unable to extricate herself therefrom.   Yet this is an essential feature and fact to be proven in a last chance case.   Pope v. Railroad, 242 Mo. 232; Degonia v. Railroad, 224 Mo. 595; Kinlen v. Railroad, 216 Mo. 164.

*Yates & Mastin* and *Reed & Harvey* for respondent.

(1) The position of the respondent is that there was no contributory negligence. (a) At the time the testimony shows Mrs. Cozby looked towards the train and when she was within a few feet of the track the train was four to six or seven hundred feet distant from her, and she had the right to assume that the train would observe the ordinance rate of speed, and if it had done so, she could have cleared the track in perfect safety.   The cases cited by appellant involve situations essentially different from the case at bar. There are a great mass of reported crossing cases in this State and the principles of law applicable thereto are well settled.   The facts in this case bring it well within the class of cases in which verdicts and judgments for plaintiff have been upheld.   Strauchon v. Railroad, 232 Mo. 587; Powers v. Transit Co., 202 Mo. 280; Riska v. Depot Co., 180 Mo. 168; Heintz v. Transit Co., 115 Mo. App. 671; Hutchinson v. Railroad, 161 Mo. 253; Sullivan v. Railroad, 117 Mo. 221; Hornstein v. United Railways, 195 Mo. 458.   (b) The

law does not impose the duty on pedestrians to accurately determine the rate of speed, and misjudgment in this respect does not convict such pedestrian of contributory negligence. Strauchon v. Railroad, 232 Mo. 600; Heintz v. Transit Co., 115 Mo. App. 671; Murray v. Transit Co., 108 Mo. App. 501; Powers v. Railroad, 202 Mo. 281; Riska v. Depot Co., 180 Mo. 191; Hutchinson v. Railroad, 161 Mo. 246. (2) But conceding, for argument only, that Mrs. Cozby was guilty of contributory negligence, nevertheless, under the humanitarian doctrine, the plaintiff is entitled to recover. Murphy v. Railroad, 228 Mo. 56; Felver v. Railroad, 216 Mo. 195; Waddell v. Railroad, 213 Mo. 16; Holmes v. Railroad, 207 Mo. 163; Zander v. Transit Co., 206 Mo. 464; McQuade v. Railroad, 200 Mo. 158; Sites v. Knott, 197 Mo. 711; Klockenbrink v. Railroad, 172 Mo. 678. (a) Appellant maintains that because there is an allegation in the petition that Mrs. Cozby was in the exercise of due care, the humanitarian doctrine cannot be relied upon. Whatever of doubt there may have been in regard to the propriety of relying in the same count on common law negligence and the humanitarian doctrine it has now been definitely settled that this can be done. Clark v. Railroad, 242 Mo. 570. (b) The defendant was guilty of negligence *per se* in operating its train in excess of the ordinance rate of speed and in failing to observe the provisions of the ordinance relative to signals. Strauchon v. Railroad, 232 Mo. 587; McKenzie v. Railroad, 216 Mo. 19; King v. Railroad, 211 Mo. 1; Powers v. Railroad, 202 Mo. 280; Eppstein v. Railroad, 197 Mo. 735; Sluder v. Transit Co., 189 Mo. 164; Riska v. Depot Co., 180 Mo. 168; Hutchinson v. Railroad, 161 Mo. 253; Gratiot v. Railroad, 116 Mo. 450; Eswin v. Railroad, 96 Mo. 290. (c) The engineer should have stopped the train at first appearance of danger. Holmes v. Railroad, 207 Mo. 162; Eckard v. Transit Co., 190 Mo. 619; Klockenbrink v. Railroad, 172 Mo. 687.

BROWN, P. J.—Plaintiff sues as the administrator of Margaret Cozby to recovery statutory damages resulting from the death. It is alleged that Mrs. Cozby was killed in the city of Oak Grove, Jackson county, Missouri, on December 23, 1905, by a lessee of defendant, while said lessee was negligently operating a railroad train over defendant's road through said city.

Plaintiff alleges in his petition that defendant's lessee negligently caused the death of Mrs. Cozby by (1) running its train in excess of twelve miles per hour, as prohibited by an ordinance of said city of Oak Grove; (2) by running its train through said city at an excessive, high and dangerous rate of speed, to-wit, thirty-five miles or more per hour; and (3) by neglecting to· observe the perilous position of said Margaret Cozby while she was on or near defendant's track, and by neglecting to slacken the speed of said train after she was observed, so as to avoid running over, striking and killing her.

This action is based upon section 5425, Revised Statutes 1909, as amended in 1905, and appellant challenges the constitutionality of that statute. Since this appeal was lodged here the constitutionality of that law has been confirmed by this court in the case of Young v. Railroad, 227 Mo. 307, but as the appeal was properly granted to this court when taken, it is our duty to retain jurisdiction and dispose of the case upon its merits. [Dickey v. Holmes, 208 Mo. 664.]

The answer of defendant pleads contributory negligence on the part of deceased, and many other alleged defenses, but the conclusions we have reached render it only necessary to deal with the plea of contributory negligence.

At the time Mrs. Cozby was killed Oak Grove was a city of the fourth class, containing about 800 inhabitants. Said city has one principal street—Broadway—which runs north and south. The defendant owns a railroad track which passes through said city from

west to east, crossing said Broadway street in such manner as to leave the residence part of the city on the north side of the railroad and the business houses. therein on the south side of said railroad. There is a sidewalk and also a wagon road over defendant's railroad track where the same crosses said Broadway street.

The deceased was a widow without minor children or other dependents. She was seventy-two years of age, and her hearing and eyesight somewhat defective. However, it was her custom to go unattended about the streets of Oak Grove, in which city she had resided two years next before her death.

The lessee of defendant on December 23, 1905, ran a passenger train through said city of Oak Grove on defendant's track at a speed of from thirty-five to fifty miles an hour. Said train was known as the "Red Flyer" and had been running from west to east on defendant's track through said city of Oak Grove at about the same rate of speed during many weeks. Its regular time for passing Oak Grove was eleven o'clock in the morning, but it did not stop at that city. It was running on time December 23d, when it struck and killed Mrs. Cozby.

The plaintiff introduced G. W. Gillespie and wife who testified that they were driving south on said Broadway street in a buggy, intending to cross defendant's track. Mrs. Cozby was walking in the same direction and was a short distance behind the Gillespies. When Mr. and Mrs. Gillespie were about forty feet from defendant's railroad they heard an engine whistle and stopped and waited for the train to pass, but Mrs. Cozby passed their buggy and walked on southward. When she was within six or eight feet of defendant's track she looked westward towards the approaching train; she then pulled up her dress skirts and walked more rapidly onto defendant's track and

had almost passed over same when the engine struck and killed her.

Mr. and Mrs. Gillespie, as well as other witnesses, testified that the train made quite a lot of noise, and that it was in plain view for about 1500 feet before it struck Mrs. Cozby, but that they only heard it whistle once. These witnesses did not hear the train ring its bell, nor see anything to indicate that its speed was slackened before it struck Mrs. Cozby.

One of plaintiff's witnesses (a merchant) testified that he could hear the roar of the train when it was a half a mile away from the crossing. Walter Gibson, a seventeen-year-old boy, testifying for defendant, stated that he ran across defendant's track just ahead of Mrs. Cozby, and that he told her that the train was coming and advised her not to attempt to cross in front of the train. However, he was not sure that Mrs. Cozby heard what he told her about waiting for the train to pass.

After carefully considering the evidence of those who saw the train strike Mrs. Cozby, we find that the respondent has given a correct synopsis of that evidence in the following extract from his brief:

"Mrs. Cozby approached the tracks of the defendant and when she got within four to six feet of these tracks she looked westward in the direction of the coming train and then proceeded across the tracks."

Just how close the train was to Mrs. Cozby when she started to cross defendant's track is somewhat a matter of conjecture; no one could determine such an issue with absolute accuracy. It is a certainty that the train was so close that she did not have time to pass rapidly across the track before the train struck her.

The train was equipped with air-brakes, and an expert witness, testifying for plaintiff, stated that the train could have been stopped within a space of four hundred feet, and that its speed could have been slackened one-half in a space of two hundred feet. The preponderance of the evidence shows that the air-

brakes were applied at the time or just after the train struck Mrs. Cozby, but the train ran about a half mile after the air brakes were applied before it stopped.

## OPINION.

Under the facts before stated, what was the proximate cause of Mrs. Cozby's death? Was she guilty of such contributory negligence as will bar a recovery by her administrator in this case?

The train which struck and killed her was running at a speed far in excess of that permitted by the ordinance of Oak Grove, but as Mrs. Cozby had lived near that railroad for two years she is presumed to have known of the speed at which this train was usually operated. Because the train was running at a dangerous rate of speed did not justify her in stepping onto the track when she knew that the train was approaching at its usual rapid rate of speed.

The evidence for plaintiff proves almost conclusively that Mrs. Cozby did know the train was approaching. The plaintiff admits that fact, but endeavors to escape the force of that evidence by asserting that deceased had a right to suppose that defendant would obey the ordinance of Oak Grove and not run its train through that city in excess of twelve miles an hour.

The operation of the train at a rate of speed in excess of the ordinance of Oak Grove might have justified the imposition of a fine upon the employees of defendant's lessee, provided the ordinance is valid (a point upon which we express no opinion here), but even if said ordinance is valid, we do not think its existence justified Mrs. Cozby in supposing that the engineer on the train would on that particular day do the unusual thing of reducing the speed of his train to twelve miles an hour. It is a well-known fact that people expect usual and customary things to happen, and do not expect unusual conditions to arise or extraordinary

things to happen. Plaintiff has cited Strauchon v. Street Railway Co., 232 Mo. 587; Powers v. Transit Co., 202 Mo. 267, l. c. 280; Riska v. Union Depot Railroad, 180 Mo. 168, and several simliar cases where judgments have been upheld for injuries caused by street cars which were running at a rate of speed in excess of that prescribed by city ordinance. Such cases are not very persuasive in an action like this, for the reason that street cars are not supposed to run so rapidly as railroad trains. Street cars are usually required to stop at every street crossing where passengers are desirous of getting on or alighting, so that we naturally expect their speed to be limited to a lesser number of miles than railroad trains. This is particularly true where such street cars are running through populous cities.

Under the facts in this case we hold that Mrs. Cozby was guilty of such gross contributory negligence in stepping upon defendant's track in front of a rapidly moving engine and train of cars as to bar a recovery for her death by the administrator.

The authorities are not in entire accord on this point, but the following well-considered cases seem to settle the law adversely to the contention of plaintiff and bar a recovery by him on the facts in this case: Pope v. Wabash Railroad Co., 242 Mo. 232; Laun v. St. Louis & San Francisco Railroad Co., 216 Mo. 563; and Green v. Missouri Pacific Railroad Co., 192 Mo. 131.

Respondent, however, insists that notwithstanding Mrs. Cozby saw or might have seen the train which caused her death before she stepped upon defendant's track, the defendant is, nevertheless, liable because the engineer failed to discover her perilous position and stop his train or slacken the speed thereof.

This is not a case where the humanitarian doctrine can be applied, because the deceased was aware

251 Mo.—12

of the approaching train. That doctrine often does apply where the engineer of a train sees a pedestrian standing or walking upon the track and apparently oblivious to the impending danger, or where children are seen on or approaching a railroad track.

In this case Mrs. Cozby was an adult, and as she looked towards the approaching train the engineer was fully warranted in supposing that she saw it and would exercise the ordinary intelligence of an adult and keep out of its way. It is not contended that the engineer had knowledge of any defect in the eyesight or hearing of Mrs. Cozby, or that he knew of her extreme age.

This case is, in many respects, like the case of Pope v. Wabash Railroad Company, 242 Mo. 232, where the party killed was walking on the track and knew of the approaching train but failed to leave the track in time to escape injury. In that case we held that neither the non-observance of a speed ordinance nor the failure to stop the train were proximate causes of the death. Upon the authority of that case, and others before cited, the judgment of this case should be reversed. It is so ordered.

*Walker* and *Faris, JJ.,* concur.